B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>SAM S. LESLIE, Chapter 7 Trustee, | **DEFENDANTS**<br>ALFREDO SOLIS, an individual, MISSION RECYCLING, INC., a California corporation and DOES I through X, inclusive |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>James A. Dumas, Jr. (SBN 76284)<br>DUMAS & KIM, APC.<br>3435 WIlshire Blvd., Ste. 990<br>Los Angeles, CA 90010<br>213/368-5000 Fax: 213/368-5009 | **ATTORNEYS** (If Known)<br>James D. Hornbuckle<br>Cornerstone Law Corporation<br>18000 Studebaker Rd., Suite 700<br>Cerritos, CA 90703 |
| **PARTY** (Check One Box Only)<br>[ ] Debtor   [ ] U.S. Trustee/Bankruptcy Admin<br>[ ] Creditor   [ ] Other<br>[X] Trustee | **PARTY** (Check One Box Only)<br>[ ] Debtor   [ ] U.S. Trustee/Bankruptcy Admin<br>[ ] Creditor   [X] Other<br>[ ] Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)<br>COMPLAINT:1) FOR TURNOVER OF PROPERTY OF THE ESTATE 2) TO AVOID FRAUDULENT TRANSFERS 3) TO AVOID POST-PETITION TRANSFERS 4) RELIEF FOR RETURN OF SHAREHOLDER LOANS<br>[11. U.S.C. §§ 105, 541, 542, 548, 549 and California Civil Code Sections 3439 et seq.] ||

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[X] 11-Recovery of money/property - §542 turnover of property
[ ] 12-Recovery of money/property - §547 preference
[X] 13-Recovery of money/property - §548 fraudulent transfer
[X] 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ] 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
[ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6) - Dischargeability (continued)**
[ ] 61-Dischargeability - §523(a)(5), domestic support
[ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
[ ] 63-Dischargeability - §523(a)(8), student loan
[ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[ ] 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ] 71-Injunctive relief - imposition of stay
[ ] 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ] 01-Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
[ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| [ ] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| [ ] Check if a jury trial is demanded in complaint | Demand $ **According to proof** |
| Other Relief Sought ||

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>West Coast Recycling Services, Inc., DBA "Mission Recycling" ||| BANKRUPTCY CASE NO.<br>2:16-bk-18509-BB |
| DISTRICT IN WHICH CASE IS PENDING<br>**Central District of California** | DIVISION OFFICE<br>Los Angeles || NAME OF JUDGE<br>Honorable Sheri Bluebond |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF | DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE || NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*/s/ James A. Dumas* ||||
| DATE<br>9/22/2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>James A. Dumas |||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

James A. Dumas, Jr. (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
3435 Wilshire Boulevard
Suite 990
Los Angeles, California 90010
Phone:   213-368-5000
Fax:       213-368-5009

Attorneys for Plaintiff and Chapter 7 Trustee
Sam Leslie

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>WEST COAST RECYCLING SERVICES, INC., DBA "MISSION RECYCLING"<br><br><br>Debtor<br><br>———————————————<br>SAM S. LESLIE, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>ALFREDO SOLIS, an individual, MISSION RECYCLING, INC., a California corporation and DOES I through X, inclusive<br><br>Defendant. | Case No.: 2:16-bk-18509-BB<br><br>[Chapter 7]<br><br>Adversary No.:<br><br><br>COMPLAINT:<br>1)   FOR TURNOVER OF PROPERTY OF THE ESTATE<br>2)   TO AVOID FRAUDULENT TRANSFERS<br>3)   TO AVOID POST-PETITION TRANSFERS<br>4)   RELIEF FOR RETURN OF SHAREHOLDER LOANS<br><br>[11. U.S.C. §§ 105, 541, 542, 548, 549 and California Civil Code Sections 3439 et seq.] |

COMES NOW, Plaintiff and Chapter 7 Trustee Sam S Leslie ("Trustee" or "Plaintiff"),

---

COMPLAINT: 1) FOR TURNOVER OF PROPERTY OF THE ESTATE; 2) TO AVOID FRAUDULENT TRANSFERS
3) TO AVOID POST-PETITION TRANSFERS; and 4) RELIEF FOR RETURN OF SHAREHOLDER LOANS       PAGE 1

as and for his complaint herein, complains and alleges as follows:

## I.

## THE PARTIES AND JURISDICTION

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and this is a core proceeding under 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), or 157(b)(2)(E). In the event this proceeding is determined to include non-core claims for relief, the Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court as to any such claims. Venue in the Central District of California, Los Angeles Division (the "Bankruptcy Court"), is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding is related to the bankruptcy case of West Coast Recyling Services, Inc. bearing case number 2:16-bk-18509-BB presently pending under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 because this is a civil proceeding arising in and/or related to the debtor, West Coast Recycling Services, Inc., Chapter 7 case.

2. The Plaintiff, Sam S. Leslie is the duly appointed and acting Chapter 7 bankruptcy trustee for the estate of West Coast Recycling Services, Inc. ("Debtor")

3. Plaintiff is informed and believes that, defendant, Alfredo Solis, ("Solis"), is and at all times alleged herein, was an individual residing in the County of Los Angeles, the controlling shareholder and officer of the Debtor, and subject to the jurisdiction of the Bankruptcy Court.

4. Defendant Mission Recycling, Inc. ("Mission Recycling") is a California corporation doing business in the County of Los Angeles.

5. The Debtor commenced the within bankruptcy case by filing a voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court, on June 26, 2016. ("Petition Date")

6. Plaintiff is informed and believes that defendants herein sued as Does I through X are entities owned and/or controlled by Solis that he has used to transfer and/or hold assets of the

Debtor both before and after the Petition Date. Plaintiff will amend the Complaint to identify Does I through X as soon as their identities have been obtained.

7. Plaintiff is informed and believes that Solis has at all times disregarded the separate legal existence of Mission Recycling and Does I through X and has managed them as if whatever assets they hold or actions they take are in fact his own assets and actions. Mission Recycling and Does 1 through X are the mere alter egos of Solis.

## II.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

8. Plaintiff refers to the allegations set forth in paragraph 1 through 7 hereof and incorporates said allegations herein as if fully set forth hereat.

9. The Debtor was first incorporated in October, 2002, and commencing in or about November, 2002 it began to operate a recycling business using the fictitious business name of "Mission Recycling" at a property located at 1341 E. Mission Boulevard in Pomona, California. It subsequently also began to operate at a property located at 1326 E. 9th Street in Pomona. Both properties were owned by Solis. At all times, Solis was an officer and director of the Debtor, the owner of at least 90% of its shares, and the person in sole control of its business.

10. Through at least 2012, the business had robust revenues. In 2012, its tax returns reported revenues of $11,446,883. In 2013 and 2014, the revenues declined to $9,140,444 and $7,758,694, respectively. Then in 2015, the last full year of operations, the revenues declined further to $6,556,227.

11. The Debtor was an S corporation, such that the corporation's income or losses passed through to Solis as the shareholder. The trustee is informed and believes that the Debtor was consistently profitable during the years of its operations. Notwithstanding, for every year that the trustee has tax returns, the Debtor reported on those returns catastrophic losses which were never less than 10% and usually more than 20% of gross revenues. For example, in 2012, a year in which it had $11,446,883 in gross revenues, it reported a loss of $2,661,542, a 23% loss. In 2012, the loss was $2,868,837, a more than 31% loss. By the end of 2015, it allegedly had a

negative $24,362,574 in its retained earnings account. This and other questionable transactions related to the Debtor resulted in Solis seemingly going year after year without paying any income tax on either the Debtors's pass-through earnings or on his $260,000 per year salary. On his 2015 personal income tax return Solis showed a $14,648,912 net operating loss.

12. The trustee is informed and believes that the mystery of why, year after year, Solis continued to operate a business that had such seemingly unsustainable losses is explained by the fact that in each year a very significant part of his alleged expenses consisted of cash withdrawals, allegedly to be used in so-called "door trades." In the years for which the Trustee has records, these cash withdrawals consistently represented a majority of the outflow of funds from the business: (1) 2013 - $5,718,631 (of which $497,405 was in the form of checks written to Mr. Solis personally), equal to 62.5% of total revenues; (2) 2014 - $4,884,752 (of which $497,267 was in the form of checks written to Mr. Solis personally), equal to 62.9% of total revenues; (3) 2015 - $3,583,954 (of which $183,000 was in the form of checks written to Mr. Solis), equal to 54.6% of total revenue. The trustee is informed and believes that, to the extent that records existed regarding the specific disposition of these cash withdrawals, they were destroyed subsequent to the filing of the Petition. The existing records provide no useful information to explain the disposition of these funds. As such, the trustee is informed and believes that not all of these withdrawals were used in door trade transactions and that Solis skimmed revenue from the business through the "door trade" cash withdrawals.

13. The trustee is informed and believes that the mystery of why Solis continued to operate the Debtor is also explained by the fact that the Debtor occupied two buildings owned by him for which it could be expected to pay rent. Although no leases have been produced to the trustee, the financial records of the Debtor reflect minimum monthly combined rent for the two buildings of between $41,000 to $44,000, on top of which further unexplained and inexplicable rent charges were occasionally made in far greater sums, such that in some years the charged rent exceeded a million dollars. Not all of the rent was actually paid, and the unpaid portion of it was added to unpaid rent account in favor of Solis that, according to the Debtor's financial records and Solis' testimony in the Petition, left the Debtor indebted to him in the sum of $3,075,900 at

the time of the bankruptcy petition, making him allegedly by far the largest creditor and, indeed, an allegedly secured creditor in said sum, such that he supposedly had a lien on all the assets of the debtor. In fact, no steps were ever taken to create a secured claim against the debtor's assets and the trustee is informed and believes that for the years for which it has records, the amount of the rent that was actually paid to Solis far exceeded the combined fair rental value of the two buildings which today is somewhere between $12,000 and $21,000 per month.

14. The trustee is informed and believes that the mystery is still further explained by the fact that not all of the revenue of the Debtor was deposited in bank accounts whose deposits were reflected in the Debtor's financial records. In particular, approximately $11 million in revenue paid to the Debtor over the course of several years from the State of California is not fully accounted for.

15. The trustee is informed and believes that assets purchased with the funds of the business, and used exclusively in the business, were sometimes treated as if they belonged to other entities. In particular, multiple valuable trucks, purchased with the Debtor's funds and used exclusively in the Debtor's business, were registered in the name of an entity known as BSL, Inc., an entity that in fact does not exist.

16. On February 8, 2016, Solis caused the debtor to file the first of two Chapter 7 bankruptcies, *In re West Coast Recycling Services, Inc.,* Case No. 2:16-bk-11540-DS. During the week preceding the filing, $40,703.27 in cash was withdrawn and a third party check was immediately reduced to $45,440 in cash and never deposited in the Debtor's account. During this bankruptcy, there were further cash withdrawals in the sum of $161,334.92.

17. On February 16, 2016, eight days after the first bankruptcy filing, Solis incorporated defendant Mission Recycling, taking the trade name that the Debtor had been using since its inception. Thereafter, Solis continued to operate the Debtor's business at the same location, and with the same employees and customers. However, he opened a new bank account at Chase Bank in the name of Mission Recycling. Payments on invoices to customers that had been issued by the Debtor were paid into this new Mission Recycling account. Through the end of March, 2016, while the first bankruptcy was still open, $299,661.34 was deposited in this account and

$150,700 in cash was withdrawn for alleged "door trades." In the months of April and May, 2016, a further $677,091.31 in revenue was deposited in the new Chase Bank account and there were $321,960.05 in cash withdrawals.

18. Due to a failure to file any schedules, on March 16, 2016, an order and notice of dismissal of the first bankruptcy was entered, and on March 29, the case was closed.

19. Plaintiff is informed and believes that at some point in late 2015 or early 2016, Solis sold the most valuable customer accounts to a third party.

20. By June, 2016, Solis began to wind the business down. Only $12,689.43 was deposited in the new Chase account in that month and $58,976.40 was withdrawn. On July 1, 2017, the balance in the account was $27,613.31. These funds were eventually withdrawn. The trustee has no knowledge as to whether Solis has operated the business since that time.

21. On June 26, 2016, Solis caused the Debtor to file the within bankruptcy, this time with bankruptcy schedules. All filings were signed by Solis on behalf of the Debtor and the schedules and statement of affairs that were submitted represented his sworn testimony under penalty of perjury as to the nature and extent of the Debtor's assets and liabilities, as well as its financial history.

22. Solis testified in the schedules that the Debtor had $703,537.17 in unsecured claims and that a further $3,075,900 was owed to him as a secured claim on account of his allegedly unpaid rent. He testified that there was only $300 in one bank account and that there was other personal property having a value of $1,424,500, consisting primarily of two trucks that he valued at $22,000 and $1,400,000 in property that he described as follows: "Miscellaneous recycling sorting equipment and other operating equipment and office furniture – located at 1326 E. 9th Street, Pomona, CA 91766." No mention was made of any claims or transactons regarding the transfer of the operations and receivables of the Debtor to Mission Recycling, claims against Solis himself, or any other assets.

23. Plaintiff Sam S. Leslie was appointed as trustee. Plaintiff sent a person with extensive experience in the recycling industry to 1326 E. 9th Street in Pomona to inspect what had been described in the schedules and this person determined that the equipment and trucks had been

grossly overvalued in the schedules, and that the cost of moving the equipment off the premises and repairing the trucks rendered them valueless. On September 28, 2016, the trustee filed a Notice of Abandonment of the property, including vehicles "currently stored at the real property located at 1326 E. 9th Street, Pomona, CA." No objections were thereafter filed and the identified assets were deemed abandoned.

24. Unbeknownst to the trustee, Solis had removed certain assets from the E. 9th Street location prior to the inspection by the trustee's agent which he then stored other locations. Plaintiff does not know whether this removal occurred pre- or post-petition. Multiple trucks, purchased by the Debtor and exclusively used in its business, were removed and stored at an unknown location. These trucks currently have a value of approximately $150,000 and include a 2008 Freightliner with a value of $80,000. The trustee is informed and believes that Solis is still in possession of these trucks. 55 roll-off storage bins were stored at a facility referred to as the "river property storage yard," a Pomona property owned by Solis located at 1600 Mission Boulevard, several blocks from the Mission Recycling facility on 9th Street. Solis sought to sell the storage bins, soliciting offers to be paid in cash. On August 7, 2017, he entered into a contract to sell the bins to a company known as S.A. Recycling for the sum of $125,000. The bins were then moved to the S.A. Recycling facility where they are now located. S.A. Recycling has not paid Solis because he was unable to provide confirmation that he owned the bins and S.A. Recycling has recently agreed to sell the bins to plaintiff trustee. Plaintiff believes that other valuable equipment, including extremely expensive balers, may have been removed from the 9th Street property prior to the trustee's inspection and abandonment.

### III.

### FIRST CLAIM FOR RELIEF FOR TURNOVER OF PROPERTY OF THE ESTATE
### (11 U.S.C. §§ 105, 541, and 542)
#### (Against All Defendants)

25. Plaintiff refers to the allegations set forth in paragraphs 1 through 24 hereof and incorporates said allegations herein as if fully set forth hereat.

26. Defendants Solis (the officer and director of the Debtor, as well as its controlling shareholder), Mission Recycling, and Does I through X have been in possession, custody, and control of property of the estate since the commencement of the within case, including, but not limited to, trucks, roll off storage bins, equipment, and funds of the estate. As such, they have been under a continuing obligation to turn over said property to plaintiff trustee pursuant to the provisions of 11 U.S.C. § 542(a).

27. Plaintiff is entitled to an order of this Court, pursuant to 11 U.S.C. § 542(a), requiring defendants to immediately turn over said property, or its proceeds, and to account to plaintiff for all property, property proceeds, and funds of the estate that have been in their possession since the commencement of the case.

## IV.
## SECOND CLAIM FOR RELIEF TO AVOID FRAUDULENT PRE-PETITION TRANSFERS
## (11 U.S.C. §§ 105, 541, 548, and California Civil Code §§3439 et seq.)
## (Against All Defendants)

28. Plaintiff refers to the allegations set forth in paragraph 1 through 24 hereof and incorporates said allegations herein as if fully set forth hereat.

29. In the four years prior to the bankruptcy filing, and in the period subsequent to the bankruptcy filing, defendant Solis caused the Debtor to transfer to him significant amounts of estate funds in the form of cash withdrawals, diversion of payments due to the Debtor, valuable equipment, and trucks, all without receiving reasonably equivalent value in exchange.

30. The effect of each such pre-petition transfer by defendant Solis was that the remaining assets of the debtor were unreasonably small in relation to the business of the debtor and each rendered the Debtor incapable of paying its debts as they fell due.

31. In the four years prior to the bankruptcy filing, and in the period subsequent to the filing, defendant Solis caused the Debtor to transfer to defendants Mission Recycling and Does I through X significant amounts of estate funds in the form of cash withdrawals, diversion of payments due to the Debtor, valuable equipment, and trucks, without receiving reasonably

equivalent value in exchange.

32. The effect of each such pre-petition transfer by said defendants was that the remaining assets of the Debtor were unreasonably small in relation to the business of the Debtor and each rendered the Debtor incapable of paying its debts as they fell due.

33. The transfers, and each of them, were undertaken by defendants with the actual intent to hinder, delay, and defraud the creditors of the Debtor.

34. Plaintiff is entitled to a judgment avoiding each such transfer and/or a money judgment against each defendant equal to the value of the assets transferred.

35. Plaintiff is further entitled to an award of exemplary and punitive damages according to proof.

## V.

### THIRD CLAIM FOR RELIEF TO AVOID POST-PETITION TRANSFERS

### (11 U.S.C. §§ 105, 541, 549)

### (Against All Defendants)

36. Plaintiff refers to the allegations set forth in paragraph 1 through 24 hereof and incorporates said allegations herein as if fully set forth hereat.

37. After the Petition Date, defendant Solis caused the Debtor to transfer to him significant amounts of estate funds in the form of cash withdrawals, diversion of payments due to the Debtor, valuable equipment, and trucks, all without receiving reasonably equivalent value in exchange.

38. After the Petition Date, defendant Solis caused the Debtor to transfer to defendants Mission Recycling and Does I through X significant amounts of estate funds in the form of cash withdrawals, diversion of payments due to the Debtor, valuable equipment, and trucks, without receiving reasonably equivalent value in exchange.

39. Plaintiff is entitled to a judgment avoiding each such transfer and/or against each defendant in the value of the assets transferred.

## VI.

## FOURTH CLAIM FOR RELIEF FOR RETURN OF SHAREHOLDER LOANS

### (Against Defendant Solis)

40. Plaintiff refers to the allegations set forth in paragraph 1 through 24 hereof and incorporates said allegations herein as if fully set forth hereat.

41. The withdrawals of funds and the transfers of assets by Solis, either directly or to his controlled entities, defendants Mission Recycling and Does I through X, were loans by the Debtor to Solis which Solis is obligated to repay.

42. Plaintiff is entitled to a judgment against Solis in an amount according to proof.

## VII.

## PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

**ON THE FIRST CLAIM FOR RELIEF:**

1. For a judgment against all defendants requiring the turnover of property of the estate or the proceeds thereof;

**ON THE SECOND CLAIM FOR RELIEF:**

2. For a judgment against all defendants in an amount according to proof;

**ON THE THIRD CLAIM FOR RELIEF**

3. For a judgment against all defendants in an amount according to proof;

**ON FOURTH CLAIM FOR RELIEF**

4. For a judgment against defendant Solis in an amount according to proof;

///

**ALL CLAIMS FOR RELIEF**

5. For prejudgment interest;

6. For costs of suit; and

7. For such other relief as the Court deems just and proper.

Dated: September 22, 2017                    DUMAS & KIM, APC


By:/s/ *James A. Dumas*
    James A. Dumas,
    Attorneys for Plaintiff and Chapter 7 Trustee,
    Sam S. Leslie